UNITED STATES of America, Plaintiff–
Appellee, Cross–Appellant,

v.

Shirley THOMPSON, Defendant–
Appellant, Cross–Appellee.

Nos. 94–4016, 95–1185.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1995.

Decided Feb. 12, 1996.

Barry Rand Elden, Chief of Appeals, Ryan Stoll (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee in No. 94–4016.

Margaret M. Foster (argued), McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for Shirley Thompson in Nos. 94–4016, 95–1185.

Mark A. Flessner, Ryan Stoll (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellant in No. 95–1185.

Before LAY,* CUMMINGS and DIANE P. WOOD, Circuit Judges.

LAY, Circuit Judge.

Shirley Thompson was convicted of conspiracy to possess with intent to distribute cocaine and of knowingly distributing ap-

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

proximately five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). She was sentenced to seventy months of incarceration, followed by five years of supervised release. She appeals asserting that her conviction is not supported by the sufficiency of evidence and further contends the district court erred in admitting certain photographs into evidence under Fed.R.Evid. 403. The government cross-appeals the district court's two-level reduction as to Thompson's sentence under § 3E1.1(a) for acceptance of responsibility. We affirm.

*Facts*

In 1994, the FBI investigated suspected drug trafficking from a printing business in Chicago known as Techniprint owned and operated by Candelario Baiza. Thompson worked for Baiza as a secretary. FBI undercover agents taped a series of conversations involving Baiza, Thompson, and a cooperating witness, Maldonado, revealing (1) an agreement between Maldonado and Baiza for the sale, on credit, and subsequent distribution, of a large quantity of cocaine to Maldonado on July 29, 1994, (2) the actual exchange of five kilograms of cocaine on that date and, (3) pricing information for the subsequent resale of the cocaine. Thompson was involved in six of the eight taped conversations. After preliminary negotiations between Maldonado and Baiza, Maldonado and an FBI agent arrived at the building in which Techniprint was located to take delivery of the cocaine. Thompson came to the door, unlocked the chain and padlock, let them in, and immediately re-locked the door behind them. Baiza was not present. After a short greeting, and without being informed of the reason for Maldonado's visit, Thompson briefly left, returning with a shopping bag. It was stipulated at trial the bag contained five kilograms of cocaine—a red package containing one kilogram, and two green packages each containing two kilograms.

Thompson handed the undercover agent the bag, after Maldonado said he did not want to carry it. Maldonado asked Thompson if Baiza had given her a price. She responded no, stating "he just told me to, uh, I think it's four or five in there. I forgot." Gov't ex. 9A at 2. Maldonado said he would

call back later, after Thompson had spoken to Baiza. She then unlocked the padlock on the front door, and Maldonado and the agent left with the cocaine. Later that morning, Maldonado called Thompson to confirm the price and the following exchange occurred:

MALDONADO: Did you check it out for me?

THOMPSON: Yeah. Ah....

MALDONADO: Oh, how old is she?

THOMPSON: Uh ... She's twenty.

Gov't ex. 10A at 1.

A jury convicted Thompson of conspiracy to possess cocaine with intent to distribute, and of knowingly distributing cocaine. A psychologist who evaluated Thompson prior to sentencing determined Thompson suffered from a diminished capacity to understand complex situations. The district court held Thompson to be entitled to a four-point decrease in her offense level based on her minimal role in the cocaine distribution. The court also gave a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, based on the psychological evaluation and the fact that Thompson gave information to the government as she knew and understood it. Thompson's offense level after adjustments resulted in a sentencing range below the statutory minimum. The court found Thompson satisfied the requirements of recently promulgated U.S.S.G. § 5C1.2, and imposed a prison sentence of seventy months, fifty months below the statutory minimum.

*Sufficiency of Evidence*

Thompson initially challenges the sufficiency of the evidence demonstrating her knowing participation in the conspiracy. Evidence is sufficient if any rational trier of fact could have found the requisite participatory link between Thompson and the conspiracy to distribute. *United States v. Pazos*, 993 F.2d 136, 139–41 (7th Cir.1993).

The necessary nexus between a particular defendant and a drug conspiracy may be proven "solely by way of circumstantial evidence." *United States v. James*, 40 F.3d 850, 865 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 948, 130 L.Ed.2d 891

(1995). While presence alone is not enough to convict, presence or a single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy. *Pazos*, 993 F.2d at 140 (quotations and citation omitted).

We find sufficient evidence to support a jury's determination that Thompson was a knowing participant in a conspiracy to possess and distribute cocaine. She alone was present in the chained and padlocked building where twenty-five kilograms of cocaine was stored at the time scheduled for Maldonado to pick up the cocaine. She alone opened the padlock to permit Maldonado and the undercover FBI agent to enter the building, after which she re-locked the building. Without Maldonado first stating the purpose of his visit, Thompson instructed Maldonado that she would be right back, whereupon she left the room to retrieve the bag containing the five kilograms of cocaine. Openly visible within the bag which Thompson brought to Maldonado were red and green wrapped packages, corresponding to one and two kilogram quantities of cocaine respectively. Thompson knew it was a commercial transaction. In reply to Maldonado's inquiry as to the price, Thompson stated, "I think it's four or five in there. I forgot." When Maldonado subsequently called Thompson for the price, she responded "she's twenty," which suggests she was speaking in code. This evidence permitted the jury to draw the inference that Thompson knew of the illegal objective of the conspiracy and agreed to participate in its achievement. *See United States v. Burrell*, 963 F.2d 976, 987 (7th Cir.), *cert. denied*, 506 U.S. 928, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992); *see also United States v. Caudill*, 915 F.2d 294, 297 (7th Cir.1990) (deferring to reasonable inferences drawn by the jury and the weight the jury gave the evidence).

Thompson asserts the evidence introduced against her at trial commands nothing other than the innocent interpretation that these were the actions of a secretary unwittingly performing the duties normally associated with such a position, including answering the telephone, taking messages, and transferring items to customers as required by her employer. Such a construction of the evidence may be plausible, but the jury was entitled to reject it. *James*, 40 F.3d at 864; *see also United States v. Ferguson*, 935 F.2d 1518, 1526 (7th Cir.1991) (existence of an innocent explanation does not foreclose a jury from finding guilt beyond a reasonable doubt).

Thompson's challenge to her conviction of knowing distribution is similarly unavailing. Conviction for distribution of cocaine requires proof that Thompson intentionally distributed a substance known to her to be a controlled substance. *United States v. Hernandez*, 13 F.3d 248, 251–52 (7th Cir. 1994). We find the evidence sufficient for a rational trier of fact to conclude Thompson had knowledge that the bag she handed to the undercover FBI agent contained a narcotic substance. *See United States v. Diaz*, 876 F.2d 1344, 1354 (7th Cir.1989) (defendant's conviction on substantive count was proper for the same reasons underlying conviction on conspiracy count).

*Photographs*

Thompson next argues the district court erred in denying her motion to exclude certain photographs pursuant to Fed.R. of Evid. 403. This court reviews the admissibility of evidence only for a clear abuse of discretion, *James*, 40 F.3d at 869, and a trial judge's assessment of relative probative value and unfair prejudice is generally accorded great deference. *Ferguson*, 935 F.2d at 1529.

The admitted photographs displayed the contents of a storage room in the back of the office in which Thompson worked where FBI agents discovered an additional twenty kilograms of cocaine on the same day as the cocaine transaction for which Thompson was convicted. The government presented uncontroverted evidence at trial that Thompson had access to the storage room. Moreover, at the time of the cocaine transaction, her departure through the middle door at the back of the front office, coupled with her being gone for a period of forty seconds, was consistent with her retrieving the bag containing cocaine from this storage room. As

such, the evidence had probative value in that the jury could reasonably infer that Thompson retrieved the bag she provided to the undercover agent from this storage room. In this respect, the fact that the storage room contained an additional twenty kilograms of cocaine, similarly packaged, was highly probative of Thompson's knowledge that she was distributing cocaine. At a minimum, it was relevant evidence for the jury to consider in assessing her knowledge and involvement in the drug activity. The district court found the probative value of the photographs outweighed the danger of unfair prejudice. We find no abuse of discretion in the district court's admission of the photographs.

*Acceptance of Responsibility*

■ The government asserts the district court erred in granting Thompson a two level reduction in her offense level under U.S.S.G. § 3E1.1(a), which authorizes a two-level reduction for Thompson's acceptance of responsibility for her offense. The government urges that it was required to assume the burden of trial because of Thompson's denial of legal guilt. This court has approved a two-level reduction under § 3E1.1(a) in other cases where circumstances permit a finding of acceptance of responsibility notwithstanding a defendant's denial of guilt. *Cf. United States v. Bean*, 18 F.3d 1367 (7th Cir.1994) (voluntary restitution prior to trial in check kiting scheme). We deem Thompson's case unusual. The district court found she accepted responsibility for her offenses. We pay great deference to that decision. *United States v. Sanchez–Estrada*, 62 F.3d 981, 986 (7th Cir.1995) (trial judge has the best opportunity to observe the verbal and nonverbal behavior of the defendant in contrast to looking at the cold pages of an appellate record); *see* U.S.S.G. § 3E1.1, comment. (n. 5) ("[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of respon-

sibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.").

■ In the instant case, the district court's determination that Thompson's conduct and statements fell within the range of acceptance of responsibility did not constitute clear error. The court noted that, upon her arrest, Thompson provided a statement setting forth her actions in transferring packages and dealing with large amounts of cash in the weeks preceding her arrest thus acknowledging her objective conduct. She made this statement before she was aware of any corroborating evidence in the possession of the government. She never denied giving the shopping bag to the informant or the telephone calls to the informant. In addition, the district court relied upon the testimony presented at the sentencing hearing concerning limitations on Thompson's perception and analytical abilities. This expert testimony demonstrated that Thompson has a low level of cognitive functioning combined with an elevated need for approval from others, and has a limited ability to question and analyze her surrounding circumstances.

The district court noted that the acknowledgement of the underlying facts is sufficient under all the facts and circumstances to give her recognition for acceptance of responsibility. She gave the government information as she knew it and as she understood it. There is an adequate foundation on the record to support the finding of acceptance of responsibility. We hold that under the facts and circumstances of this case, the trial judge's decision to grant a two-level decrease under U.S.S.G. § 3E1.1(a) was not clearly erroneous.

*Downward Departure*

■ The government next contends the district court erred in granting a downward departure under U.S.S.G. § 5C1.2,[1] sentenc-

---

1. That section provides:

   In the case of an offense under 21 U.S.C. § 841, 844, 846, 960, or 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)–(5) set forth verbatim below:

   (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
   (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

ing Thompson to less than the mandatory minimum sentence. A court may impose a sentence below the statutory minimum if a defendant satisfies this "safety valve" provision. Congress enacted this provision in 1994 to allow less culpable defendants who fully assist the government to avoid application of the statutory mandatory minimum sentences. As the legislative history of the section states, without such a safety valve, for "the very offenders who most warrant proportionally lower sentences—offenders that by guideline definitions are the least culpable—mandatory minimums generally operate to block the sentence from reflecting mitigating factors." *See* H.R.Rep. No. 460, 103d Cong., 2d Sess. 5 (1994). We review the district court's determination that Thompson is eligible for the reduction permitted by § 5C1.2 for clear error. *See United ed States v. Rodriguez,* 69 F.3d 136, 144 (7th Cir.1995).

Prior to sentencing, Thompson provided the government all information and evidence she had concerning the offense. She revealed she had been employed by Baiza for about one year, and that she was paid in cash. She stated that while Baiza was on vacation, she had, on several occasions, counted large sums of money, and had received a two thousand dollar cash bonus from Baiza for her work while he was gone. She provided the government with information that she delivered boxes and packages containing unknown items to unknown individuals. Furthermore, the district court, in its factfinding role, relied on expert testimony presented at the sentencing hearing concerning limitations on Thompson's perceptual and analytical abilities and concluded that Thompson was forthright within the range of her ability. Under the circumstances of this case, we cannot say the district court's determination was clearly erroneous.

(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evi-

For the foregoing reasons, the judgment of the district court is AFFIRMED.

dence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.
U.S.S.G. § 5C1.2.